IN THE CIRCUIT COURT OF WYANDOTTE COUNTY, KANSAS
CIVIL DEPARTMENT

| | |
|---|---|
| **GARNICE ROBERTSON**, as the surviving daughter of decedent, **GEORGIA CLARDY**, <br> 451 Walker Avenue <br> Kansas City, KS 66101 <br><br> Plaintiff(s), <br><br> v. <br><br> **BIG BLUE HEALTHCARE, INC. d/b/a RIVERBEND POST-ACUTE REHABILITATION** <br> Serve Registered Agent: <br> National Registered Agents, Inc. of KS <br> 112 SW 7th Street Suite 3C <br> Topeka, KS 66603 <br><br> **LITTLE BLUE HEALTH HOLDINGS, LLC** <br> Serve Registered Agent: <br> National Registered Agents, Inc. of KS <br> 112 SW 7th Street Suite 3C <br> Topeka, KS 66603 <br><br> **RYAN LEIKER** <br> Serve at: <br> 5308 W. 140th St. <br> Overland Park, KS 66224 <br><br> **GATEWAY HEALTHCARE, INC.** <br> Serve Registered Agent: <br> National Registered Agents, Inc. of KS <br> 112 SW 7th Street Suite 3C <br> Topeka, KS 66603 <br><br> **THE ENSIGN GROUP, INC.** <br> Serve Registered Agent: <br> National Registered Agents <br> 818 West Seventh Street, Suite 930 <br> Los Angeles, CA 90017 | Case No. <br><br> Division No. <br><br> JURY TRIAL DEMANDED <br><br> Pursuant to K.S.A. Chapter 60 |

| ENSIGN SERVICES, INC. f/k/a ENSIGN |
| FACILITY SERVICES, INC. |
| Serve Registered Agent: |
| 29222 Rancho Viejo Rd. #127 |
| San Juan Capistrano, CA 92675 |
| |
| GOLDEN OAKS HEALTHCARE, INC. |
| Serve Registered Agent: |
| National Registered Agents, Inc. of KS |
| 112 SW 7th Street Suite 3C |
| Topeka, KS 66603 |
| |
| Defendant(s). |

### PLAINTIFF'S PETITION FOR DAMAGES
### (PURSUANT TO K.S.A. CHAPTER 60)

The Plaintiff(s), by and through undersigned counsel, pursuant to K.S.A. Chapter 60, submits this Petition for Damages against the above-named Defendant(s), and in further support, states and alleges as follows:

### PLAINTIFF

1. Georgia Clardy ("Resident") died on April 15, 2020, from COVID-19 that developed while a resident at the skilled nursing facility known as Riverbend Post-Acute Rehabilitation located at 7850 Freeman Avenue, Kansas City, Kansas 66112 ("The Facility").

2. Plaintiff, Garnice Robertson, is, and at all times relevant hereto, an adult over the age of 21 and a resident of Kansas City, Wyandotte County, Kansas.

3. Plaintiff is a surviving child of Resident, and therefore, a member of the class of individuals authorized to pursue a wrongful death claim pursuant to K.S.A. § 60-1902.

## DEFENDANTS

4. Plaintiff incorporates by reference the allegations previously set forth and further alleges as follows.

### Big Blue Healthcare, Inc. d/b/a Riverbend Post-Acute Rehabilitation ("BBH")

5. Defendant Big Blue Healthcare, Inc. ("BBH") was at all times material hereto a foreign for-profit corporation with its principal place of business located at 29222 Rancho Viejo Rd #127, San Juan Capistrano, CA 92675, which owned and/or operated a skilled nursing facility known as Riverbend Post-Acute Rehabilitation, located at 7850 Freeman Avenue, Kansas City, Kansas ("The Facility") and is the holder of a State License issued by the State of Kansas to so operate the facility pursuant to K.S.A. Chapter 39.

### Little Blue Health Holdings, LLC ("LBHH")

6. At all times Little Blue Health Holdings, LLC ("LBHH") was at all times material hereto a foreign limited liability company with its principal place of business located at 29222 Rancho Viejo Rd #127, San Juan Capistrano, CA 92675. Defendant The Ensign Group is the sole member of LBHH. At all times relevant to this action, Defendant LBHH owned and/or operated the Facility and is the holder of a State License issued by the State of Kansas to so operate the facility pursuant to K.S.A. Chapter 39.

### Ryan Leiker ("Leiker")

7. Defendant Ryan Leiker ("Leiker") is a Kansas resident and has been identified in public records as having Operational Managerial Control over the Facility since July 2016, and was at all times

relevant hereto a manager, and/or agent for one or more of the above corporate entities and involved with the operation, management and/or control of the Facility.

### Gateway Healthcare, Inc. ("GHI")

8. Defendant Gateway Healthcare, Inc. ("GHI") is a foreign corporation with its principal place of business located at 29222 Rancho Viejo Rd # 127, San Juan Capistrano, CA 92675.

9. GHI is the sole shareholder of Defendant BBH and the sole shareholder of Defendant Golden Oaks Healthcare, Inc.

10. At all times relevant to this action, GHI was engaged in providing ancillary medical services to persons requiring such services, including Resident, by owning, operating, managing, maintaining, and controlling the Facility.

### The Ensign Group, Inc. ("EGI")

11. Defendant The Ensign Group, Inc. ("EGI") is a publicly held foreign corporation with its principal place of business located at 29222 Rancho Viejo Rd. #127, San Juan Capistrano, California 92675. EGI is the sole shareholder of Defendant GHI, the sole shareholder of Defendant Ensign Services, Inc. and the sole member of Defendant LBHH.

12. At all times relevant to this action, Defendant EGI owned, operated, exercised managerial control over, and/or did business as the Facility.

13. EGI is a holding company and its operating subsidiaries provide a broad spectrum of skilled nursing and assisted living services, physical, occupational and speech therapies, home health and hospice services and other rehabilitative and healthcare services at 216 skilled nursing facilities, 25 home



health agencies, 24 hospice agencies and nine home care businesses in Arizona, California, Colorado, Idaho, Iowa, Kansas, Nebraska, Nevada, South Carolina, Texas, Utah, Washington, and Wisconsin.

14. ESI, through its Service Centers, provides accounting, payroll, human resources, information technology, legal, risk management, and other centralized services to the members of the Ensign group of companies, including the Facility.

### Ensign Services, Inc. ("ESI")

15. Defendant Ensign Services, Inc., formerly known as Ensign Facility Services, Inc., ("ESI") is a foreign corporation with its principal place of business located at 27101 Puerta Real, Suite 450, Mission Viejo, California 92691. ESI does not have any subsidiaries.

16. At all times relevant, ESI, and/or individuals or entities acting on its behalf owned, operated, managed, maintained, and/or controlled – in whole or in part – the Facility.

17. At all times relevant to this litigation, ESI and/or individuals or entities acting on its behalf, operated, managed, maintained, and/or controlled the Facility by providing nursing consulting services and exercising control over:

   a. staffing budgets;

   b. the development and implementation of nursing policies and procedures;

   c. the hiring and firing of the administrator; and

   d. training and supervising nursing staff persons.

18. These actions and business decisions had a direct impact on the care provided to all residents including Resident.



19. Consequently, ESI owed a duty to Resident to use reasonable care for Resident's safety while under care and supervision at the Facility.

### Golden Oaks Healthcare, Inc. ("GOH")

20. Golden Oaks Healthcare, Inc., ("GOH") is a foreign corporation with its principal place of business located at 29222 Rancho Viejo Rd. #127, San Juan Capistrano, CA 92675. Defendant GHI is the sole shareholder of Defendant GOH.

21. At all times relevant, GOH, and/or individuals or entities acting on its behalf, owned, operated, managed, maintained, and/or controlled – in whole or in part – the Facility.

22. At all times relevant to this action, GOH was engaged in providing ancillary medical services to persons requiring such services, including Resident, by owning, operating, managing, maintaining, and controlling the Facility.

### DEFENDANTS' JOINT ENTERPRISE/VENTURE

23. Plaintiff incorporates by reference the allegations previously set forth and further alleges as follows.

24. Defendants BBH, LBHH, Leiker, GHI, ESG, ESI, and GOH ("Joint Venture Defendants") were engaged in a joint venture in that:

    a. The Joint Venture Defendants had an agreement, express and/or implied, among the members of the group to operate the Facility, a Kansas licensed nursing home;

b. The Joint Venture Defendants had had a common purpose to operate the Facility, a Kansas licensed nursing home;

c. The Joint Venture Defendants had a community of pecuniary interest in the operation of the Facility, a Kansas licensed nursing home; and

d. The Joint Venture Defendants had had an equal right to a voice in the direction of the operation of the Facility, a Kansas licensed nursing home.

25. There has been a close relationship between the Joint Venture Defendants at all times relevant.

26. As a consequence of the joint venture, the Joint Venture Defendants owed a joint duty to Resident to use reasonable care for their safety while under their care and supervision at the Facility.

## JURISDICTION AND VENUE

27. Plaintiff incorporates by reference all of the foregoing allegations in this Petition as though fully set forth herein.

28. Venue is proper in this Court, because the tortious acts complained of occurred in the above-referenced Kansas county pursuant to K.S.A. § 60-603.

29. Defendants are Kansas companies/entities and/or Kansas residents who committed tortious acts in the state of Missouri, thereby making jurisdiction in this Court proper.

## AGENCY

30. Plaintiff incorporates by reference the allegations previously set forth and further alleges as follows.

31. The acts hereinafter described were performed by the agents, representatives, servants, and employees of Defendants and were performed either with the full knowledge and consent of Defendants,


Filing of Steele Chaffee

7

and/or were performed by their agents, representatives, servants, or employees during the scope of their agency, representation, or employment with the Defendants.

32. Furthermore, the acts hereinafter described as being performed by the agents, representatives, servants, or employees of Defendants were performed or were supposed to be performed on behalf of and/or for the benefit of Resident.

## FACTUAL BACKGROUND

33. Plaintiff incorporates by reference the allegations previously set forth and further alleges as follows.

### Defendants' Treatment of Resident

34. On April 27, 2017, Resident was admitted to the Facility as a paying resident for the purpose of receiving protective care and oversight and all other necessary care for her existence because she was incapable of caring for herself.

35. At all times relevant hereto, Resident was in a frail, defenseless, and dependent condition.

36. As a resident at the Facility, Resident was entitled to proper nursing and staff care.

37. Resident was at risk for falling and required a sit-to-stand machine for transfers out of her wheelchair.

38. On March 21, 2020, the Facility staff were repositioning Resident. While doing so, Resident began screaming out in pain due to left knee pain, a symptom Resident had never complained of before. An x-ray was taken which showed a distal left femur fracture which had occurred during the Resident's repositioning.


Filing of Steele Chaffee

8

39. Resident was taken to Providence Medical Center where she was treated for five days before returning to the Facility.

40. During her residency at the Facility, Resident contracted COVID-19 as a direct result of exposure in the Facility.

41. Upon information and belief, on or before March 13, 2020, Riverbend knew or should have known the vital importance of ensuring COVID-19 did not enter or spread in its facility. This included monitoring both residents and staff for fever, cough, and other symptoms of COVID and adhering to social distancing guidelines.

42. Upon information and belief, on or between March 24 to March 27, 2020, a Facility staff member began showing signs and symptoms of COVID-19 infection.

43. Upon information and belief, on or between March 27 to March 28, 2020, the Facility staff member was allowed to enter the Riverbend facility without appropriate screening and was allowed to work in the Riverbend facility without utilizing personal protective equipment while he/she had a cough and fever.

44. Upon information and belief, on March 29, 2020, the staff member submitted to a COVID-19 test which came back positive on March 30, 2020.

45. Upon information and belief, on or after March 29, 2020, the Facility's residents continued to congregate in common areas, allowing COVID-19 to spread throughout the facility.

46. Upon information and belief, on or about April 1, 2020, Riverbend reported to government health officials it had positive cases at Riverbend and that it was testing other residents.

47. Upon information and belief, on or about April 3, 2020, seventeen residents and two staff members tested positive for COVID-19.

48. Defendants failed to inform Resident's family of an outbreak of COVID- 19 at the Facility.

49. In late March or early April 2020, Resident was diagnosed COVID 19 positive.

50. Defendants also lacked transparency with governmental officials regarding how dire the situation at the Facility had become. It was not until April 8, 2020, when a nurse blew the whistle, that government officials became aware the Facility lacked control over the situation.

51. On April 15, 2020, Resident died from COVID-19. Defendants negligently failed to follow proper infection control protocols and prevent an outbreak of COVID-19.

52. Defendants failed to ensure its workers were not working with symptoms consistent with COVID-19.

53. Defendants failed to provide its staff with proper personal protective equipment to prevent spread of COVID-19.

54. Defendants failed to separate those with symptoms of COVID-19 from the remaining population of the facility.

55. Defendants failed to adhere to social distancing guidelines put in place in March 2020 to keep its residents safe from being exposed to COVID-19.

## COUNT I - (Wrongful Death v. All Defendants)

56. Plaintiff incorporates by reference all of the foregoing allegations in this Petition as though fully set forth herein.

57. At all times material hereto Resident was in a defenseless and dependent condition.

58. As a result of Resident's defenseless and dependent condition, Resident relied upon Defendants to provide for Resident's safety, protection, care and treatment.

59. At all relevant times, Defendants had a duty to act in accordance with the standards of care required of those owning, operating, managing, maintaining, and/or controlling a skilled nursing facility.

60. At all relevant times, Defendants owed to Resident a legal duty to use the learning and skill ordinarily used by other members of the same field of medicine in the same or similar circumstances.

61. These duties required Defendants to implement and enforce policies and procedures to ensure the proper care for, and treatment of all residents including Resident.

62. These duties required Defendants to have sufficient and qualified staff at the Facility nursing home to ensure the proper care for, and treatment of all residents including Resident.

63. These duties required Defendants to ensure that the Facility' nurses and other staff were properly educated and trained with regard to the care and treatment of all residents including Resident.

64. Specifically, during the course of their care and treatment of Resident, Defendants and their agents, servants and/or employees breached their duties and were guilty of the following acts of negligence and carelessness and failing to measure up to the requisite standard of due care, skill, and

practice ordinarily exercised by members of their profession under the same or similar circumstances, including by:

    a. Failing to timely, consistently, and properly assess and document Resident's physical condition;

    b. Failing to provide adequate personnel and/or nursing staff to ensure Resident's 24-hour protective oversight and supervision;

    c. Failing to provide adequate assistive devices to prevent injuries while repositioning Resident;

    d. Failing to enact and carry out an adequate care plan in regard to Resident's increased risk for falls;

    e. Failing to timely transfer Resident to a facility that could provide adequate care;

    f. Failing to provide adequate staff to ensure Resident's 24-hour protective oversight, supervision and care;

    g. Failing to properly supervise and train the employees, agents and/or servants of the Defendants who were responsible for the care and treatment of Resident;

    h. Failing to have and/or implement appropriate policies and procedures regarding patients like Resident's risk of falling;

    i. Failing to consistently monitor, assess, and document Resident's physical condition;

    j. Failing to carry out and follow standing orders, instructions and protocol regarding the safe transfer of patients like Resident;

    k. Failing to implement the appropriate interventions to prevent Resident from being injured while being repositioned;

    l. Failing to have a sufficient number of staff; and

    m. Failing to follow proper guidelines in place for the prevention of COVID-19 outbreaks in long term care facilities;

    n. Failing to ensure its staff was not allowed to work at the Facility when they exhibited signs and symptoms consisted with COVID-19;



o. Failing to properly respond to the presence of COVID-19 in the Facility;

p. Failing to timely request additional staff and assistance from the public health entities available to respond to COVID-19;

q. Failing to timely protect Resident from any physical harm or injury;

r. Failing to properly supervise Resident;

s. Failing to separate residents with signs and symptoms of COVID-19 from the remaining resident population;

t. Failing to maintain a private room for Resident;

u. Failing to adhere to social distancing guidelines put in place in March 2020 to keep its residents safe from being exposed to COVID-19;

v. Failing to exercise the required skill and care for the protection, treatment and safety of Resident;

w. Failing to carry out and follow standing orders, instructions, and protocol regarding the prevention of COVID-19;

x. Failing to provide adequate training to staff regarding prevention of COVID-19;

y. Failing to provide adequate interventions to prevent COVID-19;

z. Failing to implement appropriate interventions and thereby allowing Resident to be exposed to COVID-19 in the Facility;

aa. Failing to implement an adequate plan of care to address Resident's risk for exposure and contracting of COVID-19;

bb. Failing to timely report to a physician the changes in Resident's condition;

cc. Failing to document changes in Resident's condition;

dd. Failing to adequately, accurately and timely monitor Resident's changes in condition;

ee. Failing to seek timely emergency treatment for Resident;

ff. Failing to properly re-assess Resident; and

gg. Failing to properly implement and follow a proper Plan of Care for Resident.



65. Defendants, as the owners, operators, and/or managers of skilled care nursing facilities licensed by the State of Kansas and accepting Medicare and Medicaid funds, were subject to regulations promulgated by the Kansas Division of Social Services and under the Social Security Act.

66. K.S.A. Ch. 39 Art. 9 sets out Kansas nursing home law and is required to be followed by any nursing home facility licensed in the State of Kansas. Defendants failed to adhere to the laws which were applicable to said Defendants.

67. K.S.A. 39-932 grants the licensing agency of said state the power to adopt, amend, promulgate and enforce rules, regulations and standards with respect to adult care homes operating and licensed in the State of Kansas, in order to promote safe, proper and adequate treatment and the care of residents in said adult care homes.

68. K.S.A. 39-937 states that all pertinent laws of this state and lawfully adopted ordinances and rules and regulations shall be strictly complied with in the operation of any adult care home in this state and Defendants did not comply with the same.

69. Resident was a member of the class of persons intended to be protected by the enactment of the aforementioned state and federal regulations.

70. Plaintiff is a member of the class of individuals authorized to pursue the wrongful death claim involving Resident, as stated herein, and pursuant to Chapter 60, Sections 1901, 1902, 1903, 1904, and 1905 of the Statutes of the State of Kansas.

71. As a direct and proximate result of the Defendants' negligence as stated above, Resident suffered severe pain, anxiety, mental distress, and ultimately death. Said injuries caused Resident to incur medical bills. Additionally, Resident was required to undergo treatment for the above-stated conditions, and expenses for medical care, funeral, and final disposition have been incurred.

72. As a further, direct and proximate cause of the negligence of Defendants, Plaintiff has sustained losses because of Resident's death in the nature of loss of services, companionship, comfort, instruction, guidance, counsel, training and support.

WHEREFORE, Plaintiff, prays for judgment against Defendants in an amount in excess of $75,000.00 and in an amount a jury deems fair and reasonable under the circumstances and for such other and further relief as the Court deems just and proper.

**PLAINTIFFS DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE**

Respectfully Submitted,

STEELE CHAFFEE, LLC

By: */s/ Kevin Chaffee*
Jonathan Steele  KS #24852
Kevin Chaffee  KS #24569
2345 Grand Boulevard, Suite 750
Kansas City, MO 64108
Ph: (816) 466-5947
Fax: (913) 416-9425
jonathan@nursinghomeabuselaw.com
kevin@nursinghomeabuselaw.com

ATTORNEYS FOR PLAINTIFF(S)

## CERTIFICATE OF SERVICE

I hereby certify that the below-signed Attorney signed the original of the above and foregoing and is maintaining the original copy at said Attorney's office.

*/s/ Kevin Chaffee*
Attorney for Plaintiff(s)